UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| HEIDI ANN PIERCE, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>   Defendant. ) | Case No: 1:13-CV-206<br>Collier/Carter |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying Plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 16).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 35 years old at the time of the ALJ's decision (Tr. 24, 107). She has a high school education and past work experience as a phlebotomist and veterinarian technician (Tr. 127, 140-58).

## Applications for Benefits

Plaintiff filed an application for a period of disability and disability insurance benefits (DIB) on December 1, 2009, and filed an application for Supplemental Security Income (SSI) on June 24, 2010 (Tr. 107-111). She alleged she became disabled on June 25, 2009 (Tr. 107-111). Plaintiff alleges she became unable to work on June 25, 2009, due to shoulder, back, and foot pain (Tr. 126-27). The agency denied Plaintiff's applications initially and on reconsideration (Tr. 55-66). Plaintiff appeared and testified at a hearing held on August 2, 2011 (Tr. 528-38). On August 26, 2011, an ALJ issued a decision denying Plaintiff's application (Tr. 16-24). On April 30, 2013, the Appeals Council denied Plaintiff's Request for Review (Tr. 1-6), making the ALJ's decision the Commissioner's final decision. Plaintiff has exhausted her administrative remedies and has timely filed a civil action in this Court. This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in

2

significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Sec'y of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). However, once the claimant makes a *prima facie* case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Sec'y, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Sec'y, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence or substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Sec'y, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since June

3

25, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post anterior cruciate ligament repair with early osteoarthritis of the right knee, and status post acromioclavicular joint separation of the left shoulder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 22, 1976 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a) 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 25, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-24).

Statement of Issues Raised

I.   The ALJ erred by failing to assign a specific weight to the opinion of treating physician, Dr. Frauwirth, and explain the weight given to that opinion.

II.  The ALJ failed to analyze the opinion as a whole properly and erroneously found it consistent with his determined residual functional capacity (RFC).

III. The ALJ erred when he failed to find Plaintiff credible due to her daily activities. Plaintiff's daily activities are not incompatible with her stated disabling symptoms.

Relevant Facts

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 16-24) and in Defendant's memorandum (Doc. 16). Below is a summary of record; specific references to relevant portions will follow in the analysis section.

Plaintiff's medical history dates back to 1996 when she first tore her anterior cruciate ligament (ACL) in her right knee (Tr. 324). Plaintiff suffers from the following severe impairments: status post anterior cruciate ligament repair with early osteoarthritis of the right knee, and status post acromioclavicular joint separation of the left shoulder (Tr. 18, Finding No. 3). Plaintiff alleges she became disabled on June 25, 2009. (Tr. 107-111). In 1996, Plaintiff underwent an ACL reconstruction that subsequently required a second arthroscopy and removal of the hardware of the ACL in January 2001. (Tr. 19, 221, 233-34, 278, 327). In 1999, the record further indicates a history of treatment for her left shoulder, low back, and right knee and foot pain requiring repair of the acromioclavicular joint. (Tr. 18-19, 205-35, 485). Additionally, in August 2006 plaintiff underwent a repair of a right meniscus tear. (Tr.389, 272-77).

After doing well for a couple of years, Plaintiff complained of recurrent right knee pain, for which she eventually sought treatment from pain specialist Dr. Neal Frauwirth (Tr. 430-480). In 2008, Dr. Frauwirth prescribed Plaintiff a narcotic pain reliever and non-steroidal anti-inflammatory medication, which improved Plaintiff's pain. (Tr. 435-439).

5

Thereafter, in June 2009, Plaintiff sought treatment with Barry Schulman, D.P.M for right foot pain. (Tr. 382-388). Dr. Schulman's diagnosis revealed cystic changes in the cuboid bone with no evidence of fracture or joint effusion. (Tr. 290, 302). Subsequently, Dr. Schulman excused Plaintiff from work for two weeks and recommended conservative treatment. (Tr. 299-300). The notes show that Plaintiff did receive several physical therapy sessions in August 2009; however, Plaintiff was discharged in the following month after she did not show up for five scheduled appointments (Tr. 309-23). After plaintiff was discharged, she returned to Dr. Schulman due to pain and swelling in her foot after hiking; Dr. Shulman's laboratory testing returned negative pathology (Tr. 305, 388).

On October 15, 2009, Plaintiff returned to her pain specialist, Dr. Frauwirth, due to increased pain from colder temperatures (Tr. 405). Five days later, Plaintiff sought emergency room treatment for complaints of abdominal pain; however, an abdominal CT scan showed no abnormality (Tr. 285-88). Dr. Frauwirth's examination demonstrated crepitus in the right knee with joint tenderness, mild knee effusion and decreased range motion. He diagnosed Plaintiff with osteoarthritis (Tr. 399-403). In August 2010, an examination showed crepitus with joint line tenderness and mild effusion in the right knee as well as decreased range of motion of the lumbar spine (Tr. 444).

At the request of the Agency, Plaintiff was referred for a consultative examination, which was performed by William Holland, M.D., on March 15, 2010 (Tr. 324-26). Dr. Holland cited Plaintiff's complaints of pain in the left shoulder, right knee, and right foot. He noted Plaintiff ambulated with an antalgic gait, but she was easily able to sit and rise from a seated position. His examination showed Plaintiff had decreased range of motion of the left shoulder with no

6

edema, erythema, or increased warmth. Range of motion was normal in all other joints except the right knee and lumbar spine. Dr. Holland noted Plaintiff's station and gait testing, including both tandem toe and heel walking, were all normal (Tr. 325). An x-ray of the right knee showed mild degenerative changes (Tr. 327). He opined Plaintiff should be able to work six to eight hours in an eight-hour day, stand and/or walk fifteen minutes in each hour, and sit forty-five minutes of each hour; lifting restrictions limited Plaintiff to between five and ten pounds frequently, and twenty to twenty-five pounds occasionally. (Tr. 23, 326).

When Dr. Marcus Whitman, a state agency physician, reviewed the medical evidence on June 28, 2010, he opined Plaintiff could occasionally lift twenty pounds and frequently lift only 10 pounds; could stand and/or walk at least two hours in an eight-hour workday; could sit about six hours during an eight-hour workday; could only frequently push and pull with the left upper extremity, and only occasionally push and pull with the right lower extremity. (Tr. 347-48). Dr. Whitman felt Plaintiff was limited to occasional postural limitations, could not reach above shoulder level with her left upper extremity, should avoid concentrated exposure to extreme cold, wetness, and humidity, and should avoid exposure to all hazards (Tr. 348-53).

On August 12, 2010, Dr. Frauwirth completed a medical assessment form, opining that Plaintiff would need a 15-minute break for every 2 hours of work (Tr. 366). He estimated that she would be absent one to two times per week (Tr. 367). Dr. Frauwirth further opined that Plaintiff was in "severe" pain, and she could be expected to have lapses in concentration, such that she could not perform simple tasks "daily for several hours per day" (Tr. 366).

7

In November 2010, Plaintiff reported mild to moderate back and right knee pain (Tr. 389-90, 440-41). On November 22, 2010, she was referred for a second consultative examination by Dr. Holland (Tr. 485-87). Dr. Holland noted Plaintiff ambulated with a slight antalgic gait; however, she was able to sit and arise from a seated position easily and to get on and off the examination table unassisted (Tr. 487). Range of motion testing was decreased in the left shoulder with no edema, erythema, or crepitation; range of motion was normal in the elbows, wrists, and hands (Tr. 487). Grip strength was 5/5 bilaterally, and no edema was noted in her hands (Tr. 487). Range of motion was decreased in the right knee, and there was mild edema (Tr. 487). Range of motion was decreased in the lumbar spine with no scoliosis or spasm, and straight gait was normal with only a slight limp (Tr. 487). According to Dr. Holland, Plaintiff should be able to work six to eight hours in an eight-hour day, stand and/or walk fifteen minutes in each hour, and sit forty-five minutes of each hour; lifting restrictions limited Plaintiff to between five and ten pounds frequently, and twenty to twenty-five pounds occasionally (Tr. 487).

Dr. Michael Ryan, a state agency physician, reviewed the medical record in December 2010 (Tr. 489). He agreed with Dr. Whitman's assessment (Tr. 489), finding there was no new medical evidence that supported more restrictions and that Dr. Frauwirth's opinion was in fact less restrictive than Dr. Whitman's opinion (Tr. 489).

In January 2011, Dr. Frauwirth prescribed Neurontin and a TENS (transcutaneous electrical nerve stimulation) unit, and a March 2011 examination showed pain on palpation of the plantar fascia of the right foot. Dr. Frauwirth, however, noted no ecchymosis or edema, there was no limb length discrepancy, and muscle strength was 5/5 throughout all four lower extremity

8

muscle groups (Tr. 385). Dr. Frauwirth noted tenderness in the right foot and crepitus in the right knee with joint line tenderness, mild knee effusion, and decreased flexion; however, extension was full with no varus or valgus instability as well as negative Lachman's and McMurray's testing (Tr. 432-33). Although she had increased tone in the lumbar paraspinals with decreased range of motion, Plaintiff's straight leg raising was negative, and her motor was 5/5 in both upper and lower extremities (Tr. 433). An MRI of the lumbar spine in May 2011 revealed minimal bulging discs at the L4-5 and L5-S1 levels without herniation or stenosis (Tr. 429). Treatment notes in June 2011 show Plaintiff reported the TENS unit and medication allowed her to perform her daily activities more easily (Tr. 511).

## Analysis

In the issues raised, Plaintiff argues the ALJ erred in:

1. Not assigning a specific weight to the opinion of treating physician Dr. Frauwirth and not explaining the weight given to that opinion;

2. Failing to analyze Dr. Frauwirth's opinion as a whole properly, and erroneously finding it consistent with ALJ's determined residual functional capacity (RFC); and

3. Failing to find Plaintiff credible due to her daily activities, even though activities are not incompatible with stated disabling symptoms.

For the following reasons, I disagree.

I. **THE ALJ ADEQUATELY EXPLAINED THE WEIGHT GIVEN TO DR. FRAUWIRTH'S MEDICAL OPINION**

The weight afforded to a physician's opinion regarding the nature and severity of a claimant's impairments depends upon the examining relationship or treating relationship the physician may have had with the claimant, the evidence the physician presents to support his or

9

her opinion, *how consistent the physicians opinion is with the record as a whole*, the physicians specialty, and other factors. See 20 C.F.R. 404.1527(c) (emphasis added). Generally, a treating physician's opinion is entitled to more weight, and an ALJ must give good reasons for rejecting a treating physician's opinion. See 20 C.F.R. 404.1527(c)(2); Wilson v. Commr of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Sixth Circuit, however, has consistently stated that [the Commissioner] is not bound by the treating physician's opinions and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence. Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); see 20 C.F.R. 404.1527(c); Jones v. Commr of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003); Walters v. Commr of Soc. Sec., 127 F.3d 525, 529-30 (6th Cir. 1997).

On August 12, 2010, Dr. Frauwirth, Plaintiff's treating physician, completed a Medical Source Statement form in which he opined Plaintiff could sit eight hours, stand and/or walk two hours, and frequently lift up to twenty pounds but would need rest periods of fifteen minutes every two hours; further, Plaintiff may be absent more than normally allowed by employers (Tr. 364- 67). Plaintiff's contention that this medical statement was improperly rejected is not supported by the record. The ALJ explained the weight given to Dr. Frauwirth's medical opinion by considering Frauwirth's treatment notes and findings on examination and Plaintiff's admitted activities (Tr. 22). He also considered the consultative examiner's contrary opinion (Tr. 23). A treating physician's medical opinion, regarding the nature and severity of an impairment, is entitled to special significance when supported by objective medical evidence and consistent with other substantial evidence of the record (Tr. 22). The record indicates that the ALJ applied the proper standard under 20 C.F.R. §404.1527 when a portion of Dr. Frauwirth's medical

10

opinion was not accorded controlling weight (Tr. 21-23). When the ALJ specifically found that a portion of Dr. Frauwirth's medical opinion was inconsistent with the record as a whole, he concluded that Dr. Frauwirth's opinion that Plaintiff's need for rest periods of fifteen minutes every two hours and the possibility of more absences than normally allowed was simply not supported by the treatment notes, examination findings, or Plaintiff's own admission of activities (Tr. 22). Dr. Frauwirth's opinions receive great weight only if they are supported by sufficient clinical findings. Inconsistent medical opinions that stand out within the longitudinal record are also valid grounds for rejecting Dr. Frauwirth's two limitations. Here he gave great weight to the opinion of Dr. Holland, whose opinion was consistent with sedentary work (Tr. 23). Further, opinions of agency physicians were inconsistent with Dr. Frauwirth's rest period and work absence assessment. The ALJ explains the weight he assigned to Dr. Frauwirth's medical source statement as being fairly consistent with his RFC determination (Tr. 22). An ALJ may discount a doctor's opinion, including a treating doctor's opinion, when the physician does not provide objective medical evidence to support his or her opinion or if the physician's opinion is inconsistent with the record as a whole. See 20 C.F.R. §404.1527(c) ; Walters, 127 F.3d at 529-30; Bogle, 998 F.2d at 347-48. Therefore, I conclude the ALJ sufficiently analyzed Dr. Frauwirth's medical opinion.

II. **DR. FRAUWIRTH'S OPINION WAS ANALYZED AS A WHOLE, AND SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff's contention that Dr. Frauwirth's medical opinion was not analyzed as a whole is without merit. As shown above, and in the Administrative Decision, the ALJ walked through all of the relevant medical history, including Dr. Frauwirth's medical opinion. He explained what

11

portions of Dr. Frauwirth's opinion held weight, and those which did not (Tr. 18-23). The ALJ was under no obligation to accept wholesale the opinion[] of [Dr. Frauwirth]. Warford v. Colvin, CIV.A. 13-169-DLB, 2014 WL 868121 (E.D. Ky. Mar. 5, 2014). I conclude the ALJ sufficiently explained the specific weight given to Dr. Frauwirth's medical opinion. The ALJ noted the opinions of the state-agency physicians. He did not give the opinions great weight because they were non-examining physicians, but he gave them some weight and refers to them in the opinion (Tr. 22). He repeated a portion of Dr. Frauwirth's opinion as follows:

> The need for rest periods of fifteen minutes every two hours and the possibility of more absences than normally allowed is simply not supported by Dr. Frauwirth's treatment notes, his findings on examination, or the claimant's own admission of activities. Accordingly, this portion of his assessment is not accepted though the remainder of his opinion somewhat supports my overall determination regarding the claimant's residual functional capacity.

(Tr. 22). He then gives great weight to the opinion of Dr. Holland, the consultative examiner, whose opinion fully supports his RFC assessment (Tr. 23). An RFC determination is based on the record as a *whole* (SSR 96 8p, 1996 WL 374184, at *2), it is not solely derived from a single physician's medical opinion. The inquiry, therefore, is whether substantial evidence supports the ALJ's overall RFC assessment that Plaintiff is capable of sedentary work (Tr. 21, Finding No 5). For reasons that follow, I agree with the Commissioner that the ALJ properly reviewed all record evidence, including Dr. Frauwirth's opinion, and that the ALJ's decision to give the opinion some, but not significant, weight is supported by substantial evidence (Tr. 22-23).

In this case, after considering the effects of all of Plaintiff's impairments, the ALJ determined Plaintiff had the RFC to perform the full range of sedentary work (Tr. 21-22, Finding No. 5).

12

Based on that RFC, the ALJ determined at step four that Plaintiff could not perform her past relevant work (Tr. 17, 23 Finding No. 6). However, at step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ applied Medical-Vocational Guideline (Grids) Rule 201.28 to find there was other work Plaintiff could perform (Tr. 23, Finding No. 10). Accordingly, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, from June 25, 2009, the alleged disability onset date, through August 26, 2010, the date of his decision (Tr. 24, Finding No. 11).

I CONCLUDE the ALJ properly considered the relevant evidence, the status of each physician and the longitudinal record, and then performed his duty as the trier of fact in resolving any conflicts in the evidence. See Walters, 127 F.3d at 528.

### III. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CREDIBILITY ASSESSMENT OF PLAINTIFF

Finally, Plaintiff argues the ALJ erred in his assessment of her credibility related to her claims of disabling pain. Where a claimant alleges he or she has disabling subjective symptoms, the ALJ must determine whether the claimant has a condition that could reasonably be expected to cause the alleged symptoms. See 20 C.F.R. 416.929(c)(1). If the ALJ determines the claimant has such a condition, the ALJ must evaluate the intensity and persistence of the alleged symptoms and determine how they limit the claimant's ability to work. See id. The ALJ will consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence. See 20 C.F.R. 416.929(c)(3)(4) [A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability. Cruse v. Commr of Soc. Sec., 502 F.3d 532,

13

542 (6th Cir. 2007) (quoting Jones v. Commr of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003)). An ALJ may find that a claimant is not credible if there are contradictions among the medical reports, claimant's testimony, and other evidence. Warner v. Commr of Soc. Sec., 375 F.3d 387, 392 (6th Cir. 2004) (quoting Walters, 127 F.3d 525, 531 (6th Cir. 1997)). [W]e are to accord the ALJ's determinations of credibility great weight and deference, particularly since the ALJ has the opportunity of observing a witness's demeanor while testifying. Jones, 336 F.3d at 476; see also Cruse, 502 F.3d at 542 ([A]n ALJs credibility determinations . . . are to be given great weight . . . .).

In this case, the ALJ considered Plaintiff's claims of disabling symptoms and properly determined her impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ concluded Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC finding (Tr. 21). In reaching this determination, the ALJ specifically noted Plaintiff admitted she enjoyed going camping and even reported going hiking on September 2009 to Dr. Shulman (Tr. 19, 21). However, Plaintiff alleges disability prior to this date, beginning June 25, 2009 (Tr. 16). She reported daily activities, which included preparing meals, loading the dishwasher, doing laundry, shopping for groceries, and driving her children to and from school (Tr. 164-173). Therefore, the ALJ concluded that Plaintiff's activities were not indicative of an individual experiencing debilitating pain and functional limitations (Tr.21). As the Commissioner argues, the ALJ had substantial evidence to support his RFC assessment for sedentary work and his credibility assessment based on Plaintiff's daily activities, the clinical findings, the gaps in complaints of symptoms, the effectiveness of her treatment, the opinions of

14

the state agency reviewing doctors, and the opinion of consultative physician Dr. Holland (Tr. 22-23).

## Conclusion

I conclude the ALJ applied the correct legal standards in evaluating Plaintiff's case. The Sixth Circuit recognizes substantial evidence must be based on the record as a whole. See Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner, and not the Court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly. See Richardson v. Perales, 402 U.S. 389, 402 (1971); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, his decision must be affirmed where it is supported by substantial evidence in the record as a whole. See Warner, 375 F.3d at 390. Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

The administrative record as a whole contains substantial evidence to support a conclusion that Plaintiff had the RFC to perform sedentary work and was, therefore, not disabled within the meaning of the Social Security Act. That there may be substantial evidence in the record to support another conclusion is irrelevant. Walters, 127 F.3d 525 at 532

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I CONCLUDE there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor

15

remand is warranted on these facts. Accordingly, I RECOMMEND[1]:

(1)  The plaintiff's motion for judgment on the pleadings (Doc. 12) be DENIED.

(2)  The defendant's motion for summary judgment (Doc. 16) be GRANTED.

(3)  The case be DISMISSED.

S/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).